UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ECHO WESTLEY DIXON,

                              Petitioner,

          — against —

MICHAEL P. MCGINNIS, Superintendent
of Attica Correctional Facility,


                              Respondent.

---

06 Civ. 0038 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Petitioner Echo Dixon ("Dixon") filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1996). Dixon challenges his conviction in the New York State Supreme Court, Bronx County (the "trial court") on several counts of arson.  For the reasons that follow, the Court denies Dixon's petition.

## I.   BACKGROUND[1]

A.   THE UNDERLYING CONVICTION

Following a jury trial, judgment was rendered on February 11, 2003, in the trial court, convicting Dixon of two counts of arson in the second degree and one count of arson in the third degree.  Dixon was sentenced to two determinate terms of 12 years for each of the second degree counts and one

---

[1]  The factual summary below derives from the following documents: Dixon's Habeas Corpus Petition, filed January 4, 2006 (the "Petition"), the Affidavit in Opposition of David S. Weisel, dated January 10, 2007 ("Weisel Aff."), and the exhibits cited therein.  Except where specifically referenced, no further citation to these sources will be made.

determinate term of 7 ½ years for the third degree count, with the sentences to be served concurrently.

The conviction related to three incidents in which Dixon lit fires in his jail cell while serving a term of imprisonment for an unrelated matter. The facts of the three fires are essentially undisputed. The first incident occurred on March 3, 2001, when Dixon placed several miscellaneous burning items in his cell's food box, causing damage to the plexiglass mechanism and creating a small amount of smoke. On March 10, 2001, Dixon lit a larger fire around his door frame after he was denied access to a working telephone, using both his bed sheet and prison jumpsuit as fuel. The third and final incident occurred on March 14, 2001, when Dixon lit three separate fires in his cell which were all quickly extinguished by the prison guards.

At trial, Dixon argued that mistreatment by the prison guards essentially justified his actions; the fires, he asserted, were necessary in order to secure access to food, clothing, exercise, showers, a telephone, and the court. Dixon contended that lighting fires was a common tactic used by prisoners in the facility to receive attention and proper care.

B.    POST-CONVICTION PROCEEDINGS

    1.   Motion to Vacate

Dixon moved in the trial court to vacate his judgment of conviction under New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10.   He asserted that he received ineffective assistance of counsel because his attorney failed to submit a timely motion, pursuant to N.Y.C.P.L. § 210.10, to dismiss the indictment on the grounds that Dixon had not been afforded the right to testify before the grand jury.   Citing N.Y.C.P.L. § 440.10(2)(b), the trial court denied Dixon's motion on June 26, 2003, because the issues raised therein were directly appealable.

2.   <u>Direct Appeal</u>

Dixon appealed his conviction to the New York Supreme Court Appellate Division, First Department ("the Appellate Division") raising the following claims: (1) the trial court's supplemental instructions were fatally flawed because they omitted the knowledge element of arson in the second degree; further, the trial court's response to a juror's oral request for help in distinguishing arson in the fourth degree was insufficient because it lacked a definition of recklessness; (2) the prosecutor failed to prove beyond a reasonable doubt the count of arson in the second degree related to the March 14 incident; alternatively, the conviction was against the weight of the evidence; and (3) Dixon was deprived of effective assistance of counsel because his attorney failed to

3

move to dismiss the indictment pursuant to N.Y.C.P.L. § 210.20 within the five days allotted by N.Y.C.P.L. § 190.50(5)(c), thereby waiving Dixon's right to testify before the grand jury.

On June 2, 2005, the Appellate Division unanimously affirmed Dixon's conviction, and on August 15, 2005, the New York Court of Appeals denied Dixon's application for leave to appeal. See People v. Dixon, 795 N.Y.S.2d 587 (N.Y. App. Div. 1st Dep't) lv. denied, 836 N.E.2d 1157(N.Y. 2005).

### 3.   Second Motion to Vacate

On August 20, 2005, Dixon moved again in the trial court to vacate his judgment pursuant to N.Y.C.P.L. § 440.10, claiming that his conviction had been obtained through the administration of cruel and unusual punishment.  The court denied Dixon's motion on January 3, 2006 pursuant to N.Y.C.P.L. § 440.10(2)(c), finding that the issues raised in the motion could have been, but were not, addressed on direct appeal.  On July 20, 2006, the Appellate Division denied Dixon's application for leave to appeal the denial of his second motion to vacate the judgment.

### 4.   Dixon's Habeas Corpus Petition

Dixon now seeks, pro se, a writ of habeas corpus alleging the following grounds: (1) trial counsel's negligent failure to secure Dixon's statutory right to testify before the grand

4

jury amounted to ineffective assistance of counsel; (2) the prosecutor failed to prove beyond a reasonable doubt the count of arson in the second degree related to the March 14 incident; alternatively, the conviction was against the weight of the evidence; (3) Dixon was denied due process because the supplemental instructions given to the trial jury were both erroneous and confusing; and (4) Dixon was subjected to cruel and unusual punishment which both justified his actions and warranted dismissal of the arson charges.

## II.  **DISCUSSION**

A.  LEGAL STANDARDS FOR HABEAS RELIEF

A petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates the United States Constitution or federal law or treaties of the United States. See 28 U.S.C. § 2254(a).  Before seeking federal relief, a petitioner generally must have exhausted all available state court remedies.  See id. § 2254(b) and (c).  To do so, the petitioner must have fairly presented his federal claims to the highest available state court, setting forth all of the factual and legal allegations he asserts in his federal petition.  See Daye v. Attorney Gen., 696 F.2d 186, 190 n.3, 191-92 (2d Cir. 1982).  Here, there is no dispute that Dixon has exhausted his state court remedies with respect to each of

his current claims.

A federal court's authority to review a habeas petition also depends on whether the state court adjudicated the petitioner's claims on the merits or on procedural grounds. A state court adjudicates a petitioner's federal claims "on the merits" under 28 U.S.C. § 2254(d) when it: (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. See Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). If decided on the merits, a habeas petition will not be granted on any such claim unless the claim involved a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Alternately, state court adjudication of a petitioner's claims may result in a judgment based on state law grounds that are independent of the federal questions raised and that are adequate to support the judgment. See Lee v. Kemna, 534 U.S. 362, 375 (2002) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)); Garcia v. Lewis, 188 F.3d 71, 76-78 (2d Cir. 1999). Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief. Harris v. Reed, 489 U.S. 255, 263 (1989)

(internal quotations and citations omitted); see also Glenn v.
Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); Levine v. Comm'r of
Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).  In such cases,
a federal court is generally barred from reviewing the
petitioner's claims.

B.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL[2]

        Dixon claims that he was denied his constitutional right
to effective assistance of counsel when his attorney
negligently failed to secure his statutory right to testify
before the grand jury.   See N.Y.C.P.L. § 190.50(5)(a)
(ensuring that a criminal defendant has the "right to appear
before [a] grand jury as a witness in his own behalf"); see
also U.S. Const. amend. VI (guaranteeing the assistance of
counsel to all defendants in a criminal prosecution).
Although Dixon had made clear his intent to testify, the
prosecutor failed to produce him in court on the appointed
day.   Dixon was consequently arraigned on June 5, 2001.

_____

        [2]Dixon also appears to assert as a separate claim in his pro se
motion that he was denied his constitutional right to due process of law
because he was never given the opportunity to testify before the grand
jury on his own behalf.  The law that guarantees a defendant's right to
testify before the grand jury, however, is embodied in a New York state
statute, not the U.S. Constitution.  See N.Y.C.P.L. § 190.50(5)(a).  This
claim therefore cannot stand as a ground for federal habeas relief.  See
Green v. Artuz, 990 F. Supp. 267, 273 (S.D.N.Y. 1998); Lopez v. Riley, 865
F.2d 30, 32 (2d Cir. 1989); Bingham v. Duncan, No. 01-CV-01371, 2003 WL
21360084, *4 (S.D.N.Y. June 12, 2003).  Moreover, as will be discussed
below, a subsequent conviction by a petit jury cures any defect in a grand
jury proceeding.  See United States v. Mechanik, 475 U.S. 66, 70 (1986).
Thus, although Dixon may have been deprived of a state statutory right,
his federal constitutional right to due process was not violated in any
substantive and demonstrably prejudicial manner.

Although Dixon's motion to dismiss the indictment pursuant to
N.Y.C.P.L. § 210.20 was dated June 8, 2001, Dixon's attorney
did not file it the until June 13, 2001, three days past the
deadline prescribed by N.Y.C.P.L. § 190.50(5)(c).   The New
York Supreme Court consequently denied Dixon's motion for
dismissal, finding that "[t]he defendant's failure to move to
dismiss the indictment within the five day period set forth in
C.P.L. § 190.50(5)(c) is deemed a waiver of any objection to
the denial of the his [sic] right to testify before the Grand
Jury."   People v. Dixon, Indictment No. 2370 2001 (Hunter,
J.S.C., June 20, 2001).

This claim was clearly decided on the merits by the state
court; on direct appeal, the Appellate Division held that "the
failure of defendant's original attorney to file a timely
motion to dismiss the indictment pursuant to CPL 190.50(5)(c),
standing alone, did not constitute ineffective assistance."
Dixon, 795 N.Y.S.2d at 588.

Having been adjudicated in the state courts on the
merits, this claim must fail on habeas review because it is
not contrary to clearly established federal law.   See 28
U.S.C. § 2254.   In order to prevail on a claim of ineffective
assistance of counsel, a habeas petitioner first "must show
that his attorney's performance 'fell below an objective
standard of reasonableness,' and second, he must show that

8

there is a 'reasonable probability' that but for counsel's error, the outcome would have been different." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994) (<u>quoting</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 668 and 694 (1984)).

Although Dixon's attorney's failure to submit the N.Y.C.P.L. § 210.20 motion to dismiss the indictment within the five days allotted by N.Y.C.P.L. § 190.50(c) was negligent at best, and can certainly not be considered "sound trial strategy," Dixon has failed to demonstrate that the outcome of the proceedings would have been different had the motion been filed on time. <u>Strickland</u>, 466 U.S. at 689.

Dixon asserts in his pro se motion that because he was indicted with three counts of arson in the second degree and only convicted of two of those counts, his testimony before the grand jury would have changed the outcome of the proceedings. In <u>Mechanik</u>, the Supreme Court held that a conviction by a petit jury suffices to overcome any defect in a grand jury proceeding; "measured by the petit jury's [guilty] verdict, . . . any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." 475 U.S. at 70. In a case before the district court in the Eastern District of New York involving a similar issue, <u>Santiago v. McGinnis</u>, No. 00-CV-05870, 2002 WL 31946709 (E.D.N.Y. Oct. 21, 2002), the defendant's attorney

9

failed to notify the accused that he had a right to testify before the grand jury. Finding that the petitioner had failed to demonstrate actual prejudice resulting from his attorney's allegedly ineffective assistance, the court concluded that Santiago's "subsequent conviction by a petit jury under the reasonable doubt standard makes it highly unlikely he could have convinced the grand jury of the absence of probable cause." Id. at *5. In light of "the low burden of proof for obtaining an indictment," this Court is not persuaded that Dixon's testimony before the grand jury would have had a dramatic impact on the ultimate outcome of the case at trial, and in the absence of demonstrable prejudice there can be no Sixth Amendment violation. See Boyd v. Hawk, 965 F. Supp. 433, 451 (S.D.N.Y. 1997); see also Bingham, No. 01-CV-01371, 2003 WL 21360084, at *4 (holding that a subsequent conviction cures any defect in a grand jury proceeding and forecloses the possibility of a Sixth Amendment violation).

C.  FAILURE TO PROVE THE MARCH 14, 2001 COUNT OF ARSON IN THE SECOND DEGREE BEYOND A REASONABLE DOUBT; IN THE ALTERNATIVE, CONVICTION AGAINST THE WEIGHT OF THE EVIDENCE

Dixon claims that the prosecution failed to prove beyond a reasonable doubt the count of second degree arson related to the March 14, 2001 fires. He argues that the only evidence received by the court indicating that the building had in fact been damaged (a required element of second degree arson under

N.Y. Penal Law § 150.15) was "unduly vague and non-specific."
(Weisel Aff. Exhibit 6).

The evidence in question is the testimony of Fire
Marshall Callaghan ("Callaghan").  When asked what damage the
fire had caused, Callaghan replied "[c]harring and
blackening."  Id.  Dixon contends that Callaghan's response
did not specify the part of the cell that was actually damaged
by the March 14 fire; further, Dixon questions Callaghan's
reliability as a witness because he did not know whether the
prison staff had appropriately preserved the site of the fire
until Callaghan had an opportunity to inspect it.

On direct appeal, the Appellate Division found that
"[t]here is no basis for disturbing the jury's evaluation of
expert testimony."  Dixon, 795 N.Y.S.2d at 588.  Having been
adjudicated on the merits, this issue is exhausted and can be
reviewed by a federal habeas court.

When a habeas petitioner challenges the sufficiency of
the evidence presented at his criminal trial, he "is entitled
to habeas corpus relief if it is found that upon the record
evidence adduced at the trial no rational trier of fact could
have found proof of guilt beyond a reasonable doubt."  Jackson
v. Virginia,  443 U.S. 307, 324 (1979).  Further, the habeas
petitioner "bears the burden of rebutting the presumption that
all factual determinations made by the state court were

11

correct." <u>Farrington v. Senkowski</u>, 214 F.3d 237, 241 (2d Cir. 2000).

This Court is not persuaded that Dixon has sufficiently rebutted the evidence presented at his trial to the extent necessary to warrant habeas relief. Callaghan's testimony concerning the extent of damage that the building suffered was not given in an evidentiary vacuum, but was corroborated by pictorial evidence that illustrated quite clearly that the cell was indeed damaged by the fires. (<u>See</u> Weisel Aff., Exhibit 2). Further, the context of Callaghan's questioning clearly indicates that when he said "[c]harring and blackening," he was referring "to the door, floor, and walls of the cell." (Weisel Aff. Exhibit 6). Based on the evidence in the record, the Court finds that "a rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324.

Moreover, Dixon's alternative argument that the conviction was against the weight of the evidence "does not raise an issue of constitutional dimensions unless the record is so totally devoid of evidentiary support that a due process issue is raised." <u>Robinson v. Scully</u>, 683 F. Supp. 941, 943 (S.D.N.Y. 1988); <u>see also</u> <u>Mapp v. Warden</u>, 531 F.2d 1167, 1173-74 n.8 (2d Cir. 1976), <u>cert. denied</u>, 429 U.S. 982 (1976); <u>United States ex rel. Terry v. Henderson</u>, 462 F.2d 1125, 1131

(2d Cir. 1972).  For the reasons previously discussed, the Court finds that the evidence in the record indicates, with sufficiency adequate to overcome a due process challenge, that the March 14 fires damaged the building.  Accordingly, Dixon's twin claims that the prosecutor failed to prove the count of second degree arson related to the March 14, 2001 fires beyond a reasonable doubt, and that the conviction was against the weight of the evidence, are both denied.

D.   ERRONEOUS SUPPLEMENTAL JURY INSTRUCTIONS

After receiving a second note from the deliberating jury asking the trial court to clarify the difference between second, third, and fourth degree arson, the trial judge reconvened the jury in the courtroom to give them the "barebones" definitions of the three charges.  These supplemental instructions simply recited the precise words of the state penal statutes defining arson in the second, third, and fourth degree.  Dixon asserts that because the supplemental jury instructions omitted the "knowledge" element from arson in the second degree, and because the trial court merely repeated the "barebones" definitions in response to a juror's oral request for help in distinguishing arson in the fourth degree, the supplemental instructions were flawed to such an extent that he was denied his constitutional right to due process of law.  See U.S. Const. amend. XIV, § 1.  The

13

Appellate Division considered the issue and found that "[t]he court's response to a note from the deliberating jury was meaningful and appropriately conveyed the applicable legal principles . . . . [T]he court's response provided the jury with the guidance it was seeking." Dixon, 795 N.Y.S.2d at 588. Thus, this claim was also adjudicated on the merits by the state court.

This Court notes at the outset that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law grounds." Estelle v. McGuire, 502 U.S. 62, 67 (1991). The Second Circuit has repeatedly determined that a "jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." U.S. ex rel. Smith v. Montanye, 505 F.2d 1355, *1359 (2d Cir. 1974); see also DiGuglielmo v. Smith, 366 F.3d 130 (2d Cir. 2004) (finding that because "the Appellate Division ruled that, as a whole, the instructions at DiGuglielmo's trial properly set forth the law of New York[, the federal habeas court was] not empowered to second-guess that ruling . . . ."").

Habeas relief would be appropriate if Dixon could prove "not merely that the instruction [was] undesirable, erroneous,

14

or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." <u>Cupp v. Naughten</u>, 414 U.S. 141 (1973). The Court concludes that Dixon has not met this requisite burden of proof. While the omission of the "knowledge" element of arson in the second degree from the supplemental instructions may be considered "undesirable" or even "erroneous," it must be noted that the jury had been given repeated instructions on second degree arson that included this element. Further, Dixon has failed to prove that the supplemental instruction was not merely harmless error. The Supreme Court has stressed repeatedly that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one . . . . [A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." <u>Delaware v. Van Arsdall</u> 475 U.S. 673, 681 (1986). In the present case, the knowledge element addresses whether the defendant knew or was aware of a reasonable probability that another person was present in the building at the time he started the fire. <u>See</u> New York Penal Law § 150.15 (1965). This Court fails to see how a reasonable jury, having previously been given instructions containing the knowledge element, could fail to consider, following a clarifying

definition, that Dixon was unaware of a high probability that there were other people in the prison facility at the time he lit the fires in his cell.  During at least two of the three incidents, in fact, the record indicates that Dixon lit fires knowing that he was under the direct supervision of the prison staff.  Thus, this Court is not persuaded that, under the particular circumstances presented, the omission of one more repetition of an element of the offense at issue "so infected the entire trial that the resulting conviction violates due process."  Cupp, 414 U.S. at 147.  For the foregoing reasons, Dixon's claim that the supplemental jury instructions deprived him of his right to due process of law is denied.

E.    "CRUEL AND UNUSUAL PUNISHMENT" CLAIM RAISED IN SECOND MOTION TO VACATE

Dixon's claim that his being subjected to cruel and unusual punishment provided a justification for his actions was not raised in his direct appeal, but was subsequently raised in a motion to vacate the judgment of conviction pursuant to N.Y.C.P.L. § 440.10.  The state court held this claim to be procedurally barred by N.Y.C.P.L. § 440.10(2)(c) because the issue appeared on the face of the record and Dixon failed to raise it on direct appeal.[3]

---

[3]  N.Y.C.P.L. § 440.10(2)(c) states that the court must deny a motion to vacate a judgment when, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing

The requirement that habeas petitioners exhaust their remedies in state court "refers only to remedies still available at the time of the federal petition." Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982).  Since Dixon may no longer bring this claim before any state court, it is considered exhausted.  See Teague v. Lane, 489 U.S. 288, 297-98 (1989) (finding that the habeas petitioner had exhausted his state court remedies with respect to a particular claim after his failure to raise the claim at trial and on appeal resulted in a state procedural bar).

As the state court's denial of this claim rests on independent and adequate state grounds, habeas review of the claim by this Court is prohibited absent a showing of fundamental unfairness.  See Lambrix v. Singletary, 520 U.S. 518, 522-23 (1997); Coleman, 501 U.S. at 750.  A state court decision finding a procedural default constitutes independent and adequate grounds where "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263.  Here, the state trial court's January 3, 2006 decision clearly states that "this issue was, or could have been, reviewed on defendant's direct appeal.  It therefore may not be raised here . . . ." People v. Dixon, Indictment No.

---

to defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him."

17

2370/01 (Cirigliano, J.S.C., Jan. 3, 2006).  The Appellate Division denied Dixon leave to appeal, finding that "there is no question of law or fact presented which ought to be reviewed by the Appellate Division . . . ."  People v. Dixon, Indictment No. 2370/01 (Mazzarelli, J., July 20, 2006).  Thus, the "last reasoned" court decision expressly states that the judgment rests on a state procedural bar.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

In such procedural default cases, a federal habeas court may review a petitioner's claim only if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claim will "result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  With respect to the first test, "cause" is defined as "some objective factor external to the defense" that impeded the defendant's efforts to raise the claim.  See McCleskey v. Zant, 499 U.S. 467, 493 (1991) (citations omitted).  The only "cause" that Dixon might plausibly assert for failing to raise this claim on direct appeal is the ineffective assistance of his appellate counsel.  However,

Dixon has not asserted that his appellate counsel was ineffective, and "[s]uch a claim could still be raised in state court by writ of coram nobis.  This issue is not exhausted and cannot be 'deemed exhausted.'"  <u>Loving v. O'Keefe</u>, 960 F. Supp. 46, 48 (S.D.N.Y. 1997).  Thus, Dixon has not demonstrated cause for the default, and where a petitioner has failed to show cause, the Court need not consider actual prejudice.  <u>See</u> <u>McCleskey</u>, 499 U.S. at 502; <u>see also</u> <u>Acosta v. Giambruno</u>, 326 F. Supp. 2d 513, 520 (S.D.N.Y. 2004).

The Court may still review habeas claims that the state court found procedurally barred where such review may prevent a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986); <u>see also</u> <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002).  The petitioner bears a high burden with respect to claims of actual innocence because entertaining such claims during habeas review is disruptive to the finality of criminal convictions and imposes a burden on the trial court.  <u>See</u> <u>Herrara v. Collins</u>, 506 U.S. 390, 417 (1993).  Without new, clearly exculpatory evidence, even a meritorious claim of a constitutional violation may be insufficient grounds for excusing a procedural default.  <u>See</u> <u>Speringo v. McLaughlin</u>, 202 F. Supp. 2d 178, 189-90 (S.D.N.Y.

2002) (citing Schlup v. Delo, 513 U.S. 298, 316 (1995)). Dixon presents no evidence to indicate that any alleged constitutional errors relating to his conviction resulted in a fundamental miscarriage of justice, as there is no dispute that Dixon did indeed light the fires.  Perhaps more important is that however severe were the conditions Dixon objected to, his own subjective characterizations of them as "cruel and unusual punishment" does not justify his resorting to the extreme of setting fire to his cell and endangering other lives.  Dixon is therefore not entitled to habeas relief on the basis of this claim.


### III.  ORDER

For the reasons set forth above, it is hereby

**ORDERED** that Dixon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Dixon has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:      New York, New York
            June 18, 2007

                                         _____
                                             Victor Marrero
                                                U.S.D.J.